IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

MARK A. YOUNG                                                    PLAINTIFF

VERSUS                                        CIVIL ACTION NO. 2:08cv247KS-MTP

SOUTHERN CAL TRANSPORT, INC.,
AND LARRY COX                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Exclude Expert Testimony of John F. Weichel, Ph.D., P.E., or any other employee of SEA, Ltd. **[#67]** filed on behalf of the plaintiff. The court, having reviewed the motion, the pleadings and exhibits on file, the briefs of counsel and being otherwise fully advised in the premises finds that the motion should denied. The court specifically finds as follows:

This case involves an accident which occurred on September 27, 2005, between the vehicle driven by the plaintiff, Mark Young, and the tractor-trailer operated by Southern Cal driver Larry Cox on the ramp from U.S. Highway 49 South to I-59 South in Hattiesburg. During the course of the litigation, and because of contested issues of the etiology of the plaintiff's physical injuries and actual damage to the plaintiff's vehicle caused in the accident, the parties sought opinions from biomechanical experts.

The plaintiff alleges that in October and November, 2008, his counsel consulted regarding this case with Sandra A. Metzler, D.Sc., P.E., a senior Technical Consultant with the Biomechanical Engineering Practice Group of SEA, Ltd., in Columbus, Ohio.

The plaintiff contends that after discussions regarding the case, Dr. Metzler agreed to serve as an expert witness for the plaintiff in this matter. He also asserts that those discussions included a frank and candid disclosure by counsel of his perceptions of the weaknesses of the case and his theories regarding the proof necessary to address them.

On April 20, 2009, the plaintiff identified Dr. Metzler as one of his experts in his responses to defendant's interrogatories propounded to the plaintiff. Following the disclosure of Dr. Metzler as an expert for the plaintiff, defendants' counsel advised plaintiff's counsel that, coincidentally, they had been consulting with John F. Weichel, Ph.D., P.E., a Senior Project Engineer with the Biomechanical Engineering Practice Group of SEA, Ltd., the same firm which employed Dr. Metzler.

According to the defendants, on March 6, 2009, counsel for the defendants telephoned SEA, Ltd., in Columbus, Ohio, regarding retaining one of their bio-mechanical experts to provide an opinion in this case. After determining which expert would be appropriate for this case, the defendants telephoned Dr. John Weichel with SEA on April 10, 2009, to discuss using him as the defendants' expert in this case. Another telephone call was made on April 13, 2009, to Dr. Weichel to discuss all information necessary for him to formulate his opinion. On April 17, 2009, a letter of retention along with all requested case information was mailed to Dr. Weichel. Thereafter, on April 20, 2009, SEA performed a conflict check upon receipt of the file materials, and, finding none, accepted retention by the defendants.

After discussions between counsel, the defendants on April 28, 2009, filed a Motion to Extend Deadlines wherein the conflict regarding experts was set out. The

plaintiff joined in this motion. The motion asserted "Through mere circumstance, the parties are now in a position where additional experts will have to be retained and issues regarding the withdrawal of current experts will need to be resolved." The court granted the motion and extended the deadline. Thereafter, the plaintiff named Jack W. Sparks, Ph.D., P.E. as his expert witness. The defendants elected to continue using the services of Dr. Weichel after contacting him and having Dr. Weichel confirm with Dr. Metzler that she had not been retained by the plaintiff and had no specific confidential case information regarding this incident. Defense counsel has asserted that plaintiff's counsel was aware of this decision and voiced no objection.

What precipitated the plaintiff's designation of Dr. Metzler stems from November 13, 2008, when plaintiff's counsel had served on a panel with Dr. Sandra Metzler, a biomechanical engineer with SEA, at the American Bar Association Women in Products Liability Seminar in New York, New York. *See* Affidavit of Dr. Sandra Metzler, attached as Exhibit "B" to the defendants' response. In what appears from Dr. Metzler's affidavit to have been a passing conversation with Dr. Metzler, the plaintiff's counsel informed Dr. Metzler that he was involved in two cases in which he may seek opinions from Dr. Metzler. *See* Exhibit "B." Dr. Metzler testified in her affidavit that her conversation with the plaintiff's counsel was merely cursory in nature, without identifying any specific details regarding the accident, the parties involved or any proposed opinions. According to Dr. Metzler, this was the sum total of her interaction with the plaintiff's counsel. The plaintiff's counsel had no further contact with Dr. Metzler prior to disclosing her as an expert in this case.

In rebuttal to the defendants' response, plaintiff's counsel now offers the further

explanation that by simple coincidence, in August 2008, he was asked to participate as a panel speaker at an ABA seminar on products' liability to be held in New York City in November of 2008. The panel's topic was "Preparing to Make or Break an Expert Witness Through a *Daubert* Challenge." Plaintiff's counsel was asked to address the role of plaintiff's counsel who had offered the expert being challenged. Dr. Sandra Metzler was acting as the expert being challenged. The presentation was in the form of direct and cross-examination of the expert witness at the *Daubert* hearing, followed by a panel discussion among the expert, counsel for plaintiff and defense and the Hon. Naomi R. Buchwald, United States District Judge for the Southern District of New York.

Plaintiff's counsel asserts that In preparation for the presentation, the panel moderators and participants (excluding Judge Buchwald) held telephone conferences in September and October 2008 concerning the form of the panel presentation and the specific fact pattern to be used as a basis for the entire seminar. Plaintiff's counsel, who is a graduate engineer, and Dr. Metzler worked on the specifics of the expert reports for both the plaintiff and defense experts, which were included in the seminar materials. In this process, counsel and Dr. Metzler apparently had several separate telephone conversations and e-mail exchanges concerning the details of the reports. This collaboration resulted in two reports being prepared for use at the seminar.

Following the completion of the reports, plaintiff's counsel outlined direct and cross-examination topics for the *Daubert* hearing and had apparently several more telephone conversations and e-mail exchanges with Dr. Metzler in November 2008 in preparation for the mock hearing. During several of these conversations, plaintiff's counsel asserts that he talked with Dr. Metzler about her background and experience

and discussed two cases in which he had need for expertise in her field.  One of them was the present case.  According to plaintiff's counsel, they agreed to discuss the cases further after the panel presentation in New York.

On November 18, 2008, following the panel presentation, plaintiff's counsel states that he and Dr. Metzler spoke privately for more than 30 minutes about the two cases with most of that time spent talking about the present case.  He asserts that they specifically discussed the circumstances of the accident, particularly the low speeds claimed at impact, and whether a collision at those speeds could – from an engineering standpoint – produce forces sufficient to cause the injuries suffered by the plaintiff.  In that discussion, counsel contends that they addressed the plaintiff's height (6'5") and weight (more than 250 lbs) as contributing factors to the breaking of the bracket holding the truck seat to the truck body and the effect of the breaking of the bracket on the mechanics of injury.

Following that discussion, plaintiff's counsel asserts that Dr. Metzler offered the preliminary opinion stated in the plaintiff's answers to interrogatories, specifically that a collision between a light truck like Mark Young's truck and an eighteen-wheel tractor-semitrailer like the defendants' truck would have produced an instantaneous impulse of sufficient force to cause the low back injuries suffered by Mark Young, particularly given the fact that the impact was of sufficient force to break the driver's side seat bracket in Mark Young's truck.  Counsel also contends that Dr. Metzler agreed to act as an expert for the plaintiff in this matter.

Plaintiff's counsel further contends that following the conference, due to a combination of circumstances, he was not able to get back to Dr. Metzler to arrange for

her to examine the plaintiff's vehicle. However, plaintiff's counsel has stated that he felt that his discussions with Dr. Metzler and her statements of opinion about the case obligated him to disclose her preliminary opinions in answers to interrogatories on April 20, 2009.

After being advised n April 21, 2009, by defense counsel of the fact that they had both consulted experts from SEA, Ltd.'s Columbus, Ohio office, plaintiff's counsel immediately contacted Dr. Metzler, who allegedly acknowledged their prior discussions. Dr. Metzler consulted SEA's conflict system and determined that conflict information indicating SEA's retention by Southern Cal Transport in this civil action had been posted to SEA's conflict system only that morning. Due to SEA's internal procedures, the first to post information controlled the engagement, regardless of the time of initial contact. Therefore, Dr. Metzler was unable to serve as plaintiff's expert in this matter.

On July 29, 2009, Dr. Weichel performed an inspection of the plaintiff's vehicle in Hattiesburg, Mississippi, in the presence of the plaintiff and his counsel, with no objection from counsel. Thereafter, on October 16, 2009, Dr. Weichel was designated as an expert witness by the defendants, also providing his expert report. The expert report, signed by Dr. Weichel, also indicates that it was reviewed by Dr. Metzler. Following receipt of this report, no objection to Dr. Weichel was raised by the plaintiff until the instant motion on December 2, 1009, after the close of discovery. The plaintiff now asserts that it is clear from the report that Dr. Metzler had not been sheltered from involvement in the case by SEA, Ltd., but had in fact reviewed the report and, at a minimum, endorsed it, thus he filed the present motion.

Both Dr. Metzler and Dr. Weichel have testified that Dr. Metzler's review of the report was simply to ensure that proper procedures and principles were used in formulating the opinions. *See* Exhibits "A" and "B." In fact, Dr. Metzler testified that she was not aware that the report she reviewed even pertained to the case mentioned by the plaintiff's counsel. *See* Exhibit "B." Moreover, Dr. Metzler stated that her only recommendations with regard to the report were grammatical changes.

Plaintiff's counsel indicates that he was stunned to see Dr. Metzler's signature on the report indicating that she had reviewed the report as part of its preparation. He asserts that it was unclear from her mere signature what involvement that review indicated, but it was sufficient to raise a question concerning the apparent conflict it represented since the opinions stated in the report were diametrically opposed to the preliminary opinion offered by Dr. Metzler to plaintiff's counsel.

The plaintiff contends that the defendants' involvement of Dr. Metzler as an expert in this case violates F.R.C.P. 26(b)(4)(B), which limits the ability of a party to discover facts known or opinions held by an opposing party's expert who is not expected to testify. Further, because counsel for the plaintiff had held discussions with Dr. Metzler prior to learning of the involvement of the defendants' consultation with Dr. Weichel, and had allegedly disclosed to Dr. Metzler his knowledge, concerns and theories of the case, counsel contends that allowing any employee of SEA, Ltd., to act as an expert for the opposing parties would also result in the disclosure and use of protected work product in violation of F.R.C.P. 26(b)(3).

Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure states that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert

who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" in the absence of exceptional circumstances rendering it impracticable for the party to obtain facts or opinions on the same subject matter by other means.

Rule 26(b)(4) is designed to promote fairness by precluding unreasonable access to an opposing party's trial preparation. *See* Advisory Committee Notes, Fed.R.Civ.P. 26(b)(4)(B); *Ager v. Jane C. Stormont Hosp. & Training School for Nurses*, 622 F.2d 496, 502 (10th Cir.1980); and 4 MOORE'S FEDERAL PRACTICE ¶ 26.66[4] (1987). Furthermore, the rule makes no provision for *ex parte* communication with a party's expert witness by the opposing party. *See, Zvolensky v. Ametek, Inc.*, 142 F.3d 438 (6th Cir. 1998)("Generally, non-testifying experts are protected from discovery so as to allow a party to feel free to hire and consult with such experts without risking exposing certain information to the opposing party…. Likewise, the same reasoning would apply to prevent the opposing party from calling as a witness at trial that same expert."); *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984)(In proceeding as they did *[ex parte]*, defendants circumvented the discovery process and subverted the principle of fairness that underlies Rule 26(b)(4)(B).").

According to *Koch Refining Company v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181-82 (5th Cir. 1996), and other than cases where an expert has clearly switched sides, a two-part test is utilized to determine whether an expert must be disqualified, the burden of proving which is borne by the moving party.

> First, was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed?

Second, was any confidential or privileged information disclosed by the first party to the expert?

If the answer to both of these questions is in the affirmative, then the expert must be disqualified; however, if the answer to either question is negative, the expert may not be disqualified. *See Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246, 1248 (E.D. Va. 1991).

Initially, the court must decide whether the moving party and the expert had "a relationship which permitted [the retaining party] reasonably to expect that any communication. . .would be maintained in confidence by [the expert]." *In re Ambassador Group, Inc. Litigation*, 879 F.Supp. 237, 243 (E.D. N.Y. 1994). In this vein, the case of *Mayer v. Dell*, 139 F.R.D. 1 (D.C. 1991) is instructive. Therein, the plaintiff sued a former management/investment firm for losses stemming from the firm's alleged poor investment choices. *Mayer*, 139 F.R.D. at 1. During the litigation, John Little, a CPA, had a single meeting with the firm's attorney to discuss the case, but was never retained by the firm's attorney to serve as an expert, performed no work for the firm, received no fee from the firm, and received no correspondence from the firm other than the Complaint. *Id.* at 2. Thereafter, Little was engaged by the plaintiff as an expert. *Id.* at 1. The firm then sought to disqualify Little from the case. *Id*.

The court, in analyzing the lone meeting of Little and the firm's counsel, held that such was a mere consultation to determine whether Little may later be retained, elaborating that:

> . . with respect to a circumstance in which, as here, the expert met but once with counsel, was not retained, was not supplied with specific data relevant to the case and was not requested to perform any services, a reviewing court found

> that the evidence "supports the findings that the meeting was a type of informal consultation rather than the commencement of a long term relationship." *Nikkal Industries, Ltd. v. Salton , Inc.*, 689 F.Sup p. at 190.

Id. at 3-4. Thus, and with regard to the first prong of the relevant inquiry, the *Mayer* court found that this meeting was insufficient to satisfy the requirement that a confidential relationship existed. *Id.*

It is noteworthy that other district courts have held similarly with regard to an expert who has been consulted on a case. *See Mays v. Reassure American Life Ins. Co.*, 293 F.Supp.2d 954, 956- 957 (E.D. Ark. 2003)(nothing in the Federal Rules prohibits a party from calling as its expert witness a person who might have been consulted by an opposing party.); and *Procter & Gamble Co. v. Haugen*, 184 F.R.D. 410, 412-13 (D. Utah 1999)(no provision in Federal Rules providing for disqualification where expert has consulted with other side.).

Although unnecessary, the *Mayer* court further addressed the second prong of the inquiry concerning the disclosure of confidential information. *Mayer*, 139 F.R.D. at 4. The firm's sole evidence concerning the disclosure of information was provided by the affidavit of its attorney, which stated that the discussion with Little concerned "plaintiff's strategy in the litigation, the kinds of experts [plaintiff] expected to retain, plaintiff's view of the strengths and weaknesses of each side, the role of each of the plaintiff's experts to be hire and anticipated defenses." *Id*. at 4. The court found that such a discussion did not implicate the disclosure of privileged information. *Id*. The court further ruled that such was merely "a flow of information which was essentially technical." *Id.*, *quoting Nikkal Industries, Ltd. v. Salton, Inc.*, 689 F.Supp. 187, 191

(S.D. N.Y. 1988). Finding neither prong of the analysis satisfied, the court denied the motion to disqualify Little. *Id.*

Similarly here, the plaintiff's counsel had a single meeting with Dr. Metzler and perhaps other conversations which were mostly concerned with other issues. During their one meeting at the conference, the plaintiff's counsel contends that his discussions with Dr. Metzler "included a frank and candid disclosure by counsel of his perceptions of the weaknesses of the case and his theories regarding the proof necessary to address them." *See* ¶ 1, Docket Entry 67. Dr. Metzler indicates that the discussion was not so detailed according to her recollection but even assuming arguendo that this allegation is true, such a consultation does not meet the requirement for the formation of a confidential relationship. *See Mayer*, 139 F.R.D. at 3-4. Moreover, such a vague discussion does not implicate the application of the attorney work-product privilege. *See Mays v. Reassure Am. Life Ins. Co.*, 293 F.Supp.2d 954, 957 (E.D. Ark. 2003)(the party seeking to disqualify must identify "specific and unambiguous disclosures that if revealed would prejudice the party.").

The court finds that the plaintiff's counsel had no confidential relationship with Dr. Metzler, and that no confidential information outside generally known facts was disclosed to her. There was a single face to face conversation and no documents provided, no agreement reached with regard to retaining Dr. Metzler, and no follow-up telephone call or correspondence to her regarding this case. As such, the plaintiff's motion should be denied. However, the court would admonish the defendants to carefully advise Dr. Wiechel that Dr. Metzler should be entirely excluded from any further contact with this case out of an abundance of caution.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Exclude Expert Testimony of John F. Weichel, Ph.D., P.E., or any other employee of SEA, Ltd. **[#67]** filed on behalf of the plaintiff is denied.

SO ORDERED AND ADJUDGED this the 10th day of March, 2010.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE